1
2
3
4
5                           UNITED STATES DISTRICT COURT
6                           EASTERN DISTRICT OF CALIFORNIA
7

8   DWAYNE DENEGAL,                      CASE NO. 1:15-cv-01251-LJO-MJS (PC)

9              Plaintiff,                **ORDER DISMISSING COMPLAINT WITH
                                         LEAVE TO AMEND**
10     v.
                                         **(ECF NO. 1)**
11  R. FARRELL, et al.,
                                         **AMENDED COMPLAINT DUE WITHIN
12             Defendants.               THIRTY (30) DAYS**

13

14          Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil

15   rights action brought pursuant to 42 U.S.C. § 1983. Her complaint is before the Court for

16   screening.

17   **I.     SCREENING REQUIREMENT**

18          The in forma pauperis statute provides, "Notwithstanding any filing fee, or any

19   portion thereof, that may have been paid, the court shall dismiss the case at any time if

20   the court determines that . . . the action or appeal . . . fails to state a claim upon which

21   relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

22   **II.    PLEADING STANDARD**

23          Section 1983 "provides a cause of action for the deprivation of any rights,

24   privileges, or immunities secured by the Constitution and laws of the United States."

25   Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

26   Section 1983 is not itself a source of substantive rights, but merely provides a method for

27   vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94

28

(1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

III.    **PLAINTIFF'S ALLEGATIONS**

Plaintiff is detained at California Substance Abuse Treatment Facility and State Prison ("CSATF") in Corcoran, California, where the acts giving rise to her complaint occurred. Plaintiff names as Defendants: (1) R. Farrell, a psychologist at CSATF, (2) R. Coffin, Chief Psychologist at CSATF, (3) A. Alphonso, a physician at CSATF, (4) Clarence Cryer, "CEO of the Medical Department" at CSATF, (5) J. Lewis, Deputy Director of Policy and Risk Management for the California Department of Corrections and Rehabilitation ("CDCR") (6) A. Vickers, "Senior Psychologist Supervisor" at CSATF.

Plaintiff's allegations may be summarized essentially as follows:

Plaintiff is a male-to-female transgender inmate. In March (or early April) 2013, Plaintiff submitted a medical request to see a doctor for a referral to an endocrinologist for hormone treatment therapy. In response to the request, Plaintiff was seen by

2

1   Defendant Dr. Alphonso, who asked Plaintiff why she wanted to be a woman in a tone

2   that Plaintiff viewed as condescending and then referred Plaintiff for a Telemeds

3   appointment. Dr. Alphonso did not discuss the risks of hormone therapy with Plaintiff, did

4   not inform Plaintiff that she needed a Gender Dysphoria diagnosis, and did not tell

5   Plaintiff that she may need twelve months of therapy before being placed on hormones.

6       On April 24, 2013, Plaintiff met with an endocrinologist, who went over the

7   transformation process and the risks associated with hormone therapy. Unable to start

8   hormone therapy until Plaintiff was diagnosed with Gender Dysphoria, the

9   endocrinologist referred Plaintiff to a mental health professional.

10       On June 14, 2013, Plaintiff met with a psychologist, Defendant Dr. R. Farrell. After

11   meeting with Plaintiff twice, Dr. Farrell issued a report finding that Plaintiff did not meet

12   the criteria for Gender Identity Disorder. Dr. Farrell recommended that, if Plaintiff

13   intended to continue her pursuit of hormone therapy, she would need to engage in at

14   least a year of mental health treatment regarding her sexual trauma history and also

15   engage in at least one year of psycho-educational treatment on challenges facing

16   transgendered individuals in prison. Plaintiff disagrees with portions of Dr. Farrell's report

17   and accuses her of misrepresenting some of Plaintiff's statements.

18       In October 2013, Plaintif filed a health care 602 inmate appeal to be granted a

19   diagnosis of Gender Identity Dysphoria, to be placed on feminizing hormones, and to be

20   transferred to a CDCR prison more friendly to transgender inmates.

21       In response to the appeal, Plaintiff was interviewed by Defendant Dr. R. Coffin.

22   Dr. Coffin sympathized with Plaintiff and asked her if she understood the physical risks

23   associated with taking hormones. Dr. Coffin, who was a member of a committee that

24   was developing policy for the care and treatment of transgender inmates, told Plaintiff

25   that CDCR had created a new protocol for people interested in hormone therapy in

26   response to other inmates prematurely stopping the expensive treatment.  Based on Dr.

27   Coffin's statements, Plaintiff came to believe that Dr. Farrell's diagnosis and

28

1  recommended course of treatment was based not on an accurate assessment of her
2  condition, but rather on a blanket policy for all transgender candidates. Coffin told
3  Plaintiff said that CDCR policy could not be bypassed. He also noted that no gender
4  reassingment surgery had yet been performed by a state agency. Following this
5  discussion, Plaintiff agreed to the one-year treatment programs, and her appeal was
6  partially granted.

7       Four months later, Plaintiff had not yet been placed in a treatment program. She
8  filed a second health care 602 inmate appeal. From an interview related to this appeal
9  Plaintiff learned that the first appeal had been delayed by Dr. Coffin's failure to file his
10  own report.

11      In July 2014, Plaintiff was recommended for hormone therapy, even though she
12  had never participated in the treatment programs Dr. Farrell recommended.[1] She began
13  the therapy on September 21, 2014. Dr. Coffin was deliberately indifferent in failing to
14  put Plaintiff into the mandatory assessment and education program and thereby denied
15  her due process.

16      On March 29, 2015, after learning that another transgender inmate had
17  reassignment surgery, Plaintiff filed a medical request to be evaluated for the same
18  surgery. Plaintiff's medical request was summarily denied on the ground that the state of
19  California does not perform this type of surgery.

20      Due to the summary denial, Plaintiff filed another health care 602 inmate appeal.
21  Dr. Coffin met with Plaintiff in response to this appeal. During the meeting, they
22  discussed Plaintiff's hormone therapy progress and a then-recent case involving a
23  transgender inmate receiving gender reassignment surgery from the state. Dr. Coffin
24  denied knowledge of the case, but his name was mentioned in the case. Dr. Coffin
25  referred Plaintiff's appeal to the second level of review.

26
27
28

---

[1] It is unclear who authorized the hormone therapy or under what circumstances.

Defendant Clarence Cryer denied Plaintiff's appeal at the second level of review on the ground that there "is no evidence-based medical or mental health outcome literature that supports surgical interventions to change gender assignments ... before an inmate has completed at least one year of hormone therapy and one year living as the gender of choice." Plaintiff claims that she has lived as a woman for years. Cryer's denial reflects deliberate indifference and a denial of due process.

Defendant J. Lewis denied Plaintiff's appeal at the director's level of review. Lewis's denial was based on Plaintiff's failure to undergo monitored hormone therapy for a minimum of one year. (Plaintiff had taken illegal, "unmonitored" hormones prior to incarceration.) Plaintiff disputes the findings in Lewis's denial and accuses Lewis of being deliberately indifferent to Plaintiff's serious medical needs.

Defendant A. Vickers signed off on Plaintiff's 602 inmate appeal and is in charge of seeing that the subordinate staff is properly trained.

Plaintiff seeks declaratory and injunctive relief, and compensatory damages.

## IV.    ANALYSIS

### A.    Linkage

Plaintiff alleges that Defendant A. Vickers signed off on Plaintiff's 602 inmate appeal and is in charge of supervising some of the other named Defendants. This allegation is insufficient to link this Defendant to any unconstitutional conduct.

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of hers rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for hers or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act

to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>accord</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-08 (9th Cir. 2011); <u>Corales v. Bennett</u>, 567 F.3d 554, 570 (9th Cir. 2009); <u>Preschooler II v. Clark Cnty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1182 (9th Cir. 2007); <u>Harris v. Roderick</u>, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff must allege specific facts that identify how Vickers personally participated in the denial of Plaintiff's rights, or knew of the violations and failed to act. If Plaintiff chooses to file an amended complaint, she must link each named defendant to her claims.

### B.    Official Capacity

Plaintiff brings suit against the Defendants in their individual and official capacities. Plaintiff is hereby informed that she may not seek monetary damages from any of the Defendants in their official capacities. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 64-66 (1989),  However, a civil rights action may be brought against a defendant in his or her official capacity where a plaintiff, as here, is seeking prospective injunctive relief. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 29-30 (1991).

### C.    Deliberate Medical Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (internal citation omitted). Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Id.</u> In the Ninth Circuit, a plaintiff alleging deliberate indifference must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (<u>citing</u> <u>Estelle</u>, 429 U.S. at 104) (internal quotation marks omitted). Second, she "must show the defendant's response to the need was deliberately indifferent." <u>Id.</u> This

second prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. An inadvertent or negligent failure to provide adequate medical care does not suffice to state a claim under Section 1983. Estelle, 429 U.S. at 105-06. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. "However, the Supreme Court has also recognized that while 'deliberate indifference' under Estelle requires more than a showing of mere negligence, 'something less than [a showing of] acts or omissions for the very purpose of causing harm or with knowledge that harm will result' will suffice." Mandala v. Coughlin, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994)).

An inmate's transsexualism can constitute a serious medical need to which prison officials may not be deliberately indifferent without violating the Eighth Amendment. See Kosilek v. Spencer, 774 F.3d 63, 86 (1st Cir. 2014) (en banc); White v. Farmer, 849 F.2d 322, 325 (8th Cir. 1988) and Merriweather v. Faulkner, 821 F.2d 408, 417 (7th Cir. 1987), cert. denied, 484 U.S. 935 (1987).

### 1. Dr. Alphonso

Plaintiff's claim against Dr. Alphonso is based on the latter's allegedly disrespectful and condescending words following Plaintiff's request for a referral to an endocrinologist. Verbal harassment, however, generally does not violate the Eighth Amendment. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("verbal harassment generally does not violate the Eighth Amendment," especially where there was no evidence "that these comments were unusually gross even for a prison setting"). Since Plaintiff has not included any other allegations as to this Defendant, Plaintiff's claim fails.

### 2. Dr. Farrell

The complaint alleges that Dr. Farrell met with Plaintiff twice despite knowing that Plaintiff had bad experiences with mental health doctors, Dr. Farrell chose to discuss

1  topics that only she felt were relevant, and Dr. Farrell determined that Plaintiff did not

2  qualify for a Gender Dysphoria diagnosis despite Plaintiff's assertions to the contrary.

3      A mere difference of opinion as to which medically acceptable course of treatment

4  should be followed does not establish deliberate indifference. Sanchez v. Vild, 891 F.2d

5  240, 242 (9th Cir. 1989). Thus, deliberate indifference is not shown if the defendant has

6  based her actions on a medical judgment that either of two alternative courses of

7  treatment would be medically acceptable under the circumstances. Jackson v. McIntosh,

8  90 F.3d 330, 332 (9th Cir. 1996). Where defendant doctors have chosen one course of

9  action and a plaintiff contends that they should have chosen another course of action,

10  the plaintiff "must show that the course of treatment the doctors chose was medically

11  unacceptable under the circumstances, ... and the plaintiff must show that they chose

12  this course in conscious disregard of an excessive risk to plaintiff's health." Id. None of

13  the allegations as to Dr. Farrell constitute deliberate indifference, and Plaintiff has not

14  alleged any additional facts that would raise her claim against this Defendant from a

15  mere difference of medical opinion to a constitutional violation.

16      Additionally, Plaintiff concludes that Dr. Farrell's failure to diagnose her with

17  Gender Dysphoria was not based on an accurate assessment of her condition, but

18  instead due to a blanket policy that transgender inmates seeking hormone therapy must

19  go through a twelve-month program. This conclusion, though, is stated as a mere a

20  speculative conclusion reached by Plaintiff without any factual support. Accordingly,

21  Plaintiff also fails to state a claim against Dr. Farrell.

22          **3.    Dr. Coffin**

23      Plaintiff accuses Dr. Coffin of deliberate indifference and causing unnecessary

24  emotional distress by adopting Dr. Farrell's assessment even after Plaintiff informed him

25  of various misrepresentations included in the report, by stating that Plaintiff had to go

26  through the twelve-month program per CDCR policy even though Plaintiff was later given

27  hormone therapy without participating in any program, and by delaying a decision on

28

1  Plaintiff's 602 appeal by not filing a report. None of these allegations rise to the level of a

2  constitutional violation.

3       There is no allegation, for example, that Dr. Coffin disregarded a Gender

4  Dysphoria diagnosis or any other condition or diagnosis. See, e.g., Norsworthy v. Beard,

5  --- F. Supp. 3d ---, 2015 WL 1500971, at *18 (N.D. Cal. 2015). Though Plaintiff disagrees

6  with Dr. Coffin's adoption of Dr. Farrell's assessment, this again reflects appears to be

7  nothing more than a difference of opinion as to Plaintiff's mental health. Also, the fact

8  that Plaintiff was told by Dr. Coffin that she needed to participate in a twelve-month

9  program before undergoing hormone therapy and later was provided hormone therapy

10  without having participated in any program does not reflect deliberate indifference as

11  opposed to, perhaps, changes in CDCR policy or difference of opinion as to the

12  necessity of such programs. Lastly, Dr. Coffin's failure to file a timely report, without

13  more, does not constitute deliberate indifference. Plaintiff must include some true facts

14  that reflect this was done in knowing disregard of Plaintiff's needs. Accordingly, the Court

15  finds that Plaintiff fails to state a claim as to this Defendant, as well.

16       **4.    Defendants Cryer and Lewis**

17       Plaintiff's claims against Defendants Cryer and Lewis are similar and based on

18  their adoption of Dr. Farrell's assessment when reviewing Plaintiff's 602 inmate appeal.

19  Generally, denying a prisoner's administrative appeal does not cause or contribute to the

20  underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). The mere

21  possibility of misconduct is insufficient to support a claim, Iqbal, 129 S.Ct. at 1949–50;

22  Moss, 572 F.3d at 969, and there is inadequate factual support for a claim that in

23  denying her inmate appeal, these Defendants knew of and disregarded a substantial risk

24  of harm to Plaintiff. Farmer, 511 U.S. at 837. Nevertheless, because prison

25  administrators cannot willfully turn a blind eye to constitutional violations being

26  committed by subordinates, there may be limited circumstances in which those involved

27  in reviewing an inmate appeal can be held liable under section 1983. Jett v. Penner, 439

28

9

1    F.3d 1091, 1098 (9th Cir. 2006). There are no facts to show that Defendants willfully

2    turned a "blind eye" to constitutional violations. Jett, 439 F.3d at 1098.

3       **C. Due Process**

4       Plaintiff also states her intent to bring a Due Process claim under the Fourteenth

5    Amendment. Plaintiff's assertion that she was improperly denied hormone therapy and,

6    later, gender reassignment surgery does not state a Due Process claim. "The Fourteenth

7    Amendment's Due Process Clause protects persons against deprivations of life, liberty,

8    or property; and those who seek to invoke its procedural protection must establish that

9    one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

10   Plaintiff does not a have protected liberty interest in hormone therapy or gender

11   reassignment surgery, and therefore, she cannot pursue a claim for denial of due

12   process with respect to the handling or resolution of her complaints. See Ramirez v.

13   Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640

14   (9th Cir. 1988)).

15   **V. CONCLUSION AND ORDER**

16      Plaintiff's Complaint does not state a claim for relief. The Court will grant Plaintiff

17   an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49

18   (9th Cir. 1987). If Plaintiff opts to amend, she must demonstrate that the alleged acts

19   resulted in a deprivation of her constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff

20   must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"

21   Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate

22   that each named Defendant personally participated in a deprivation of her rights. Jones

23   v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

24      Plaintiff should note that although she has been given the opportunity to amend, it

25   is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th

26   Cir. 2007). Plaintiff should carefully read this Screening Order and focus her efforts on

27   curing the deficiencies set forth above.

28

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of her complaint, filed August 13, 2015;

2. Plaintiff's complaint (ECF No. 1) is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will dismiss this action, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   September 11, 2015         /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28