
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE DENEGAL, | CASE NO. 1:15-cv-01251-DAD-MJS (PC) |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS (1) FOR SERVICE OF COGNIZABLE CLAIMS; AND (2) TO DISMISS ALL OTHER CLAIMS WITH PREJUDICE** |
| R. FARRELL, et al., | |
| Defendants. | **(ECF No. 12)** |
| | **FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff Dwayne Denegal, also known as Fatima Shabazz, is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

On September 14, 2015, the Court screened Plaintiff's complaint and dismissed it, with leave to amend, on the ground it failed to state a cognizable claim. (ECF No. 8.) Plaintiff's first amended complaint is before the Court for screening.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff is incarcerated at the California Substance Abuse Treatment Facility ("CSATF"), where the acts giving rise to her complaint occurred. She names the following defendants in their individual and official capacities: (1). Psychologist R. Farrell, Psy.D.; (2) Chief Psychologist R. Coffin, Psy.D.; (3) Clarence Cryer, CEO of CSATF Medical Department; (4) J. Lewis, Deputy Director, Policy and Risk Management, California Correctional Healthcare; and (5) J. Sunduram, Primary Care Physician on A Yard.

Her allegations may be summarized essentially as follows:

Plaintiff is a transgender woman.[1] She experiences gender dysphoria and distress resulting from the incongruence between her male anatomy and female gender identity. She has lived openly as a female since 2000, and has been on feminizing hormones since 2014. She continues to experience dysphoria despite hormone therapy. She believes sex reassignment surgery is medically necessary treatment for her gender dysphoria. However, she has been denied such surgery by Defendants.

#### A. History Prior to Incarceration at CSATF

Plaintiff was born in 1963. During adolescence she felt uncomfortable with her male gender. As early as ten or eleven years of age, Plaintiff felt herself to be a female. She was antagonized by her parents for displaying a female identity. Plaintiff began "hanging out" with the transgender community in New York City. At age twelve, Plaintiff

---

[1] A transgender woman is "a person whose female gender identity is different from the male gender assigned to her at birth." Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1169 (N.D. Cal. 2015), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015).

3

had a sexual encounter with a male friend, came out to said friend, and then was beaten and raped by the friend and a group of other boys.

By age fifteen, Plaintiff's parents suspected she was gay. Plaintiff fathered a son. At age sixteen, she began dressing as a woman and became a prostitute and drug dealer. By age nineteen, she was incarcerated in the New York correctional system. There, Plaintiff tried unsuccessfully to hide her gender identity. She was raped by inmates and staff.

Plaintiff eventually was released on parole and became more "outwardly visible" as a woman. Plaintiff began a relationship with a gay woman who Plaintiff lived with as "man and wife" and with whom Plaintiff had several additional children. Plaintiff's partner often dressed as a male and Plaintiff as a female.

Plaintiff and her partner moved to Georgia, where Plaintiff again was incarcerated. Plaintiff hid her gender identity until release. Upon her release, Plaintiff began dating other transgender women.

In 2000, Plaintiff's mother died and she began living full-time as a woman.

Plaintiff moved to California in 2006. She was incarcerated in 2008 and released in 2010. Upon release, Plaintiff began experimenting with "black market" feminizing hormones. Plaintiff was arrested again later in 2010 and was housed in the Los Angeles County Jail. There, Plaintiff was focused on her case and did not pursue hormones.

Plaintiff was transferred to the custody of the California Department of Corrections and Rehabilitation in 2010, and was placed in North Kern State Prison Reception in Delano, California. There, she attempted to see a "transgender doctor" but was unable to do so.

**B.     Incarceration at CSATF**

Plaintiff transferred to CSATF on October 11, 2012.

In April 2013, Plaintiff submitted a medical services request to meet with the facility endocrinologist and be placed on feminizing hormones. She met with non-party

4

Dr. Kumar in May 2013. Dr. Kumar referred Plaintiff to mental health for evaluation as Plaintiff did not yet have a diagnosis of gender dysphoria.[2]

On May 15 and June 14, 2013, Plaintiff met with Defendant Farrell. However, Farrell did not immediately file a report and, as a result, Plaintiff's hormone treatments were delayed. Farrell eventually filed a report in which she recommended Plaintiff undergo a year of mental health treatment to discuss Plaintiff's "sexual trauma" and difficulties associated with being transgender in prison. According to Plaintiff, Farrell disregarded Plaintiff's gender identity by referring to her throughout his report as "he," characterizing her as a homosexual because she is attracted to men,[3] and describing her "cross-dressing behavior." Farrell omitted significant facts from his report, such as Plaintiff's long-standing desire to live as a woman and her statements that she wished to have sex reassignment surgery.

In October 2013, Plaintiff filed a 602 health care appeal requesting that she be given a diagnosis of gender dysphoria and transferred to an institution better suited to handle transgender inmates. Plaintiff was interviewed by Defendant Coffin on November 25, 2013[4] in relation to her appeal. Coffin informed Plaintiff of Farrell's report. Coffin also informed Plaintiff that he was on a panel putting together CDCR's treatment protocols for transgender inmates. Plaintiff's appeal was granted in part. Her request for hormones was considered pending while she completed a twelve month mental health program. Plaintiff asked Coffin whether the twelve month program was necessary. Coffin informed her that the program was necessary because many inmates had started hormones and later decided to stop, costing the state money. He told her that engaging in the program was the only way to receive feminizing hormones. Plaintiff also expressed to Coffin her

---

[2] Plaintiff refers sometimes to gender identity disorder, a diagnosis which was in place at the time of some of the events at issue here, but which is now referred to as gender dysphoria. For consistency, the Court will use the term gender dysphoria.
[3] As Plaintiff points out, she identifies as female and a female attracted to men is not characterized as homosexual.
[4] Plaintiff states that the interview occurred on November 25, 2015. However, this appears to be a typographical error.

5

desire to be a woman and to undergo sex reassignment surgery. Coffin informed Plaintiff that he was unaware of any inmate in the country being provided such surgery.

By March 2014, Plaintiff had not received feminizing hormones or started the twelve month mental health program. Plaintiff filed another medical appeal. She was interviewed during her appeal by non-party L. Bluford. Bluford informed Plaintiff she would have to attend the mandatory mental health program and that this requirement could not be bypassed. She further was informed, however, that she could not begin the program until a gender dysphoria report had been prepared by Defendant Coffin. The appeal was granted in part, pending Coffin's report.

Several more months of inaction followed. Plaintiff submitted a medical request to Bluford and again was interviewed. Plaintiff was assured she would be placed in the mental health program. Shortly after this interview, Plaintiff was placed on feminizing hormones. Plaintiff never participated in the "mandatory" twelve month mental health program.

On March 29, 2015, Plaintiff submitted a health care services request form requesting to meet with a doctor specializing in transgender patients to discuss her physical transition to a woman and sex reassignment surgery. Plaintiff received a return copy of her request on March 31, 2015 with an unrecognizable signature. The response stated that, as per Defendant Dr. Sunduram, the State of California does not offer sex reassignment surgery.

On April 13, 2015, Plaintiff submitted a 602 appeal seeking sex reassignment surgery. She was interviewed by Coffin on April 23, 2015. Coffin noted in his report that Plaintiff was receiving regular hormone shots without incident. He did not make note of Plaintiff's interest in surgery. Plaintiff raised with Coffin the case of Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1169 (N.D. Cal. 2015), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015), and expressed her continued interest in sex reassignment surgery.

Coffin stated that he was not aware of the case, despite his having been a named defendant in it. Coffin bypassed Plaintiff's appeal to the second level.

Defendant Cryer reviewed Plaintiff's appeal at the second level and denied the request on the grounds that (1) Plaintiff had not engaged in hormone therapy while unincarcerated; (2) she had not engaged in hormone therapy for at least one year[5]; and (3) there was no evidence-based literature in support of the procedure in Plaintiff's case.

Defendant Lewis denied Plaintiff's appeal at the third level of review.

Finally, Plaintiff alleges that CDCR's Department Operations Manual bars sex reassignment surgery for inmates in custody as follows: "Implementation of surgical castration, vaginoplasty, or other such procedures shall be deferred beyond the period of incarceration. Surgical procedures shall not be the responsibility of the Department." CDCR Department Operations Manual § 91010.26. Title 15, section 3350.1 of the California Code of Regulations also bars sex reassignment surgery. Defendant Lewis, as Deputy Director of the Policy and Risk Management Department, perpetuated these policies. Plaintiff alleges that non-transgender women nonetheless are able to receive vaginoplasty for medically necessary reasons.

Plaintiff alleges that the denial of sex reassignment surgery violates her rights to adequate medical care under the Eighth Amendment and to equal protection under the Fourteenth Amendment to the United States Constitution. She seeks a declaration that title 15, section 3350.1 of the California Code of Regulations and Department Operations Manual § 91010.26 are unconstitutional. She also seeks injunctive relief preventing Defendants from interfering with Plaintiff's medical care and requiring them to provide adequate medical care.

IV.   **ANALYSIS**

   A.   **Eighth Amendment**

The Eighth Amendment's prohibition against cruel and unusual punishment

---

[5] At the time, Plaintiff had undergone six months of hormone therapy.

1  protects prisoners not only from inhumane methods of punishment but also from
2  inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th
3  Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v.
4  Chapman, 452 U.S. 337, 347 (1981)). While conditions of confinement may be, and
5  often are, restrictive and harsh, they must not involve the wanton and unnecessary
6  infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347).

7       Prison officials have a duty to ensure that prisoners are provided adequate
8  shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis,
9  217 F.3d 726, 731 (9th Cir. 2000) (citations omitted), but not every injury that a prisoner
10 sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045.
11 To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a
12 substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas
13 v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807,
14 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v.
15 Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

16      For claims arising out of medical care in prison, Plaintiff "must show (1) a serious
17 medical need by demonstrating that failure to treat [his] condition could result in further
18 significant injury or the unnecessary and wanton infliction of pain," and (2) that "the
19 defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680
20 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.
21 2006)).

22      "Indications that a plaintiff has a serious medical need include the existence of an
23 injury that a reasonable doctor or patient would find important and worthy of comment or
24 treatment; the presence of a medical condition that significantly affects an individual's
25 daily activities; or the existence of chronic or substantial pain." Colwell v. Bannister, 763
26 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); accord
27 Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122,
28

1131 (9th Cir. 2000).

Deliberate indifference, which is the subjective element of an Eighth Amendment claim, is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1122. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1977); Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122.

Finally, "[a] difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff's allegation that she suffers from untreated symptoms of gender dysphoria is sufficient to allege a serious medical condition. See Norsworthy, 87 F. Supp. 3d at 1170, 1187; see also Allard v. Gomez, No. 00-16947, 2001 WL 638413 (9th Cir. June 8, 2001); Meriwether v. Faulkner, 821 F.2d 408, 412-12 (7th Cir.1987) (and cases cited therein); Kosilek v. Spencer, 774 F.3d 63, 86 (1st Cir. 2014) (en banc).

Plaintiff also has sufficiently alleged that Defendants Farrell and Coffin were deliberately indifferent to Plaintiff's medical need when they delayed her access to

feminizing hormones. Plaintiff alleges that Defendant Farrell characterized Plaintiff, a transgender female, as a homosexual male cross-dresser. Taken as true as they must be at this stage of the proceedings, such allegations raise serious questions as to whether Farrell was reasonably qualified to evaluate Plaintiff's alleged gender dysphoria and need for feminizing hormones. See Norsworthy, 87 F. Supp. 3d at 1178 (citing expert opinion that such comments reflect "a profound misunderstanding of, and lack of scientific information regarding, the nature, assessment, and treatment of gender dysphoria"); Hoptowit v. Ray, 682 F.2d 1237, 1252-53 (9th Cir.1982) ("Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems."), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472, (1995).

Ordinarily, such a simple lack of appreciation for the nature of Plaintiff's condition, standing alone, might amount to negligence, but would not be sufficient to support an Eighth Amendment claim. Here, however, Plaintiff alleges more than mere negligence. She asserts that both Farrell and Coffin told her she was obligated to undergo a lengthy mental health program before beginning hormones; Coffin attributed the need for that delay to financial concerns. Together, Farrell and Coffin delayed processing Plaintiff's paperwork for more than a year and thereby prevented her from beginning a "mandatory" mental health program which ultimately was found not to have been mandatory after all.  (Plaintiff began receiving hormone treatments without having completed that program.) These facts suggest a lack of genuine medical basis for delaying Plaintiff's access to hormones.  According to Plaintiff, the delay caused her needless suffering and created even further delay in her being evaluated for sex reassignment surgery.

The pleadings also allege that Defendants Coffin, Cryer, Lewis, and Sunduram were involved in the decision to deny Plaintiff sex reassignment surgery based solely upon an institutional policy foreclosing such surgery regardless of medical need. The

policy is set forth in title 15, section 3350.1(b) of the California Code of Regulations and section 91010.26 of the Department Operations Manual. Section 3350.1(b) provides that castration and vaginoplasty are per se medically unnecessary, with the exception of vaginoplasty for the treatment for cystocele or rectocele, conditions affecting only cisgender women. According to Plaintiff, section 91010.26 provides that "Implementation of surgical castration, vaginoplasty, or other such procedures shall be deferred beyond the period of incarceration. Surgical procedures shall not be the responsibility of the Department."

It is well settled that prison officials may not deny medically necessary treatment even if the treatment conflicts with prison policy. Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014) ("[T]he blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference.") Here, the alleged blanket prohibition of specified medical procedures conflicts with the requirement that medical care be individualized and based on the particular prisoner's medical needs. See Norsworthy, 87 F. Supp. 3d at 1191 (citing Kosilek, 774 F.3d at 91); Rosati v. Igbinoso, 791 F.3d 1037, 1039-40 (9th Cir. 2015) (reversing dismissal at the screening stage where Plaintiff plausibly alleged that she was denied sex reassignment surgery because of prison's "blanket policy against SRS"); Allard, 2001 WL 638413, at *1 (reversing grant of summary judgment where there were issues of fact "as to whether hormone therapy was denied Allard on the basis of an individualized medical evaluation or as a result of a blanket rule, the application of which constituted deliberate indifference to Allard's medical needs").

Defendant Sunduram clearly denied Plaintiff's request for surgery on the basis of these policies and without consideration for Plaintiff's medical need. His sole reason for the denial: the State of California does not offer sex reassignment surgery.

The reasons for the denial by Coffin, Cryer, and Lewis are less clear. However, the existence of a clear institutional policy prohibiting sex reassignment surgery is

11

sufficient at the pleading stage to allege that these defendants denied Plaintiff sex reassignment surgery with absolute disregard of, i.e., deliberate indifference to, Plaintiff's serious medical need. See Norsworthy, 87 F. Supp. 3d at 1191; Rosati, 791 F.3d at 1039-40. While the Court does not purport to suggest that it has found sex reassignment surgery to be medically necessary or appropriate in Plaintiff's case, the existence of a blanket policy prohibiting such procedure certainly raises questions as to whether these Defendants conducted a good faith, individualized evaluation of Plaintiff's medical needs. Accordingly, the Court finds that Plaintiff states a cognizable claim against Defendants Coffin, Cryer, Lewis, and Sunduram for denying her sex reassignment surgery.

The Court does not find a cognizable deliberate indifference claim for denial of sex reassignment surgery by Defendant Farrell. Although Plaintiff's desire for such surgery may have been discussed with Defendant Farrell, it was not the purpose of the visit. Indeed, Plaintiff does not contend that such surgery would have been medically indicated at the time she saw Farrell, given her lack of professionally managed hormone therapy. The Standards of Care for the Health of Transsexual, Transgender, and Gender Non-Conforming People, developed by the World Professional Association for Transgender Health and relied on by Plaintiff in support of her request for sex reassignment surgery, counsel against surgery in such circumstances.

Accordingly, Plaintiff has stated cognizable claims for inadequate medical care against Defendants Farrell, Coffin, Cryer, Lewis, and Sunduram.

### B. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of

Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). The level of scrutiny applicable to classifications based on transgender status has not been determined by the United States Supreme Court. Courts in this circuit have reached differing conclusions as to the level of scrutiny to be applied. See Norsworthy, 87 F. Supp. 3d at 1119-20 (discrimination against transgender individuals is subject to intermediate scrutiny, which requires that the classification be substantially related to an important governmental interest and supported by an "exceedingly persuasive justification"); but see Jamison v. Davue, No. CIV S–11–2056 WBS DAD P., 2012 WL 996383 at *3 (E.D. Cal. Mar. 23, 2012) (holding that discrimination against transgender individuals is determined under the rational basis test).

Plaintiff alleges that Defendants discriminate against transgender women by denying surgery (vaginoplasty) that is available to cisgender women and that this difference in treatment is unsupported by any legitimate state purpose. These allegations are sufficient at the pleading stage to state an equal protection claim, even under the rational basis test. Thus, while the Court ultimately may need to determine the level of scrutiny applicable to Plaintiff's claims, it need not do so now.

As stated, however, Defendant Farrell did not participate in the decision to deny Plaintiff sex reassignment surgery. Accordingly, this claim runs only against Defendants Coffin, Cryer, Lewis, and Sunduram.

## V.   CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, Plaintiff's first amended complaint alleges cognizable Eighth Amendment claims against Defendants Farrell, Coffin, Cryer, Lewis, and Sunduram; and cognizable Fourteenth Amendment claims against Defendants Coffin,

Cryer, Lewis, and Sunduram. The first amended complaint states no other cognizable claims. Plaintiff previously was advised of the legal standards applicable to her claims and afforded the opportunity to cure noted defects. Further leave to amend appears futile and should be denied on that basis.

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff proceed on her Eighth Amendment medical indifference claims against Defendants Farrell, Coffin, Cryer, Lewis, and Sunduram; and her Fourteenth Amendment Equal Protection claims against Defendants Coffin, Cryer, Lewis, and Sunduram;

2. All other claims asserted in the complaint be dismissed with prejudice;

3. Service be initiated on the following Defendants:

   R. FARRELL – Psychologist, CSATF

   R. COFFIN – Chief Psychologist, CSATF

   CLARENCE CRYER – Medical Department CEO, CSATF

   J. LEWIS – Deputy Director, California Correctional Healthcare

   J. SUNDURAM – Primary Care Physician, CSATF

4. The Clerk of the Court should send Plaintiff five USM-285 forms, five summons, a Notice of Submission of Documents form, an instruction sheet and a copy of the first amended complaint filed November 16, 2015;

5. Within thirty (30) days from the date of adoption of these findings and recommendations, Plaintiff should complete and return to the Court the notice of submission of documents along with the following documents:

   a. One completed summons for each Defendant listed above,

   b. One completed USM-285 form for each Defendant listed above,

   c. Six (6) copies of the endorsed first amended complaint filed November 16, 2015;

6. Upon receipt of the above-described documents, the Court should direct

the United States Marshal to serve the above-named Defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   July 7, 2016                    /s/ *Michael J. Seng*
                                         UNITED STATES MAGISTRATE JUDGE