1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11    DWAYNE DENEGAL (FATIMA              CASE NO. 1:15-cv-01251-DAD-JLT (PC)
      SHABAZZ),
12                                         **ORDER DENYING PLAINTIFF'S MOTION
                      Plaintiff,           TO AMEND**
13                                         **(Doc. 56)**
              v.
14                                         **FINDINGS AND RECOMMENDATIONS TO**
15    R. FARRELL, et al.,                  **DENY DEFENDANTS' MOTION FOR**
                                           **SUMMARY JUDGMENT**
16                    Defendants.          **(Doc. 53)**

17

18           Plaintiff, a transgender state prisoner also known as Fatima Shabazz, is proceeding with

19    appointed counsel on a first amended complaint ("FAC") for Eighth Amendment medical

20    indifference and Fourteenth Amendment equal protection claims against defendants Coffin,

21    Cryer, Lewis, and Sundaram, while defendant Farrell is sued for medical indifference under the

22    Eighth Amendment. Pending now are defendants' motion for summary judgment for failure to

23    exhaust administrative remedies (Doc. 53) and plaintiff's motion to amend (Doc. 56).

24           For the reasons set forth below, plaintiff's motion to amend will be DENIED. Also, the

25    Court will recommend that defendants' motion for summary judgment be DENIED.

26    **I.      Plaintiff's Allegations**

27           The plaintiff alleges that at all relevant times, she was a state prisoner incarcerated at

28    California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. Plaintiff

claims that she is a transgender woman[1] who experiences gender dysphoria and distress due to the incongruence between her male anatomy and female gender identity. She brings Eighth Amendment claims alleging that prison officials interfered with her treatment, delayed providing her feminizing hormones, and denied her requests for sex reassignment surgery (including, specifically, vaginoplasty), which plaintiff believes is medically necessary to treat her gender dysphoria. She further alleges that since title 15, section 3350.1 of the California Code of Regulations and the California Department of Corrections and Rehabilitation's Department Operations Manual ("DOM") § 91020.26 bar sex reassignment surgery, they constitute unconstitutional blanket bans. Plaintiff also brings claims for violation of the Fourteenth Amendment, alleging that while non-transgender women are provided vaginoplasty under certain circumstances, transgender women are not provided the same procedure under any circumstances pursuant to title 15, section 3350.1 of the CCR. Plaintiff seeks only declaratory and injunctive relief.

## II.    Relevant Procedural Background

Plaintiff initiated this action on August 13, 2015. By order dated September 14, 2015, the Court screened plaintiff's complaint and dismissed it with leave to amend for failure to state a claim. (Doc. 8.) Plaintiff then filed the FAC, which the Court found to state claims under the Eighth Amendment for medical indifference and under the Fourteenth Amendment for violation of equal protection against Coffin, Cryer, Lewis, and Sundaram, and an Eighth Amendment claim for medical indifference solely against Farrell. (Doc. Nos. 16, 19.)

On January 12, 2017, defendants filed a motion to dismiss and argued that the FAC fails to state a claim, her claims are moot in light of recent changes to the DOM, and/or her claims are barred because she is a class member in Plata v. Schwarzenegger, No. C-01-1351 TEH (N.D. Cal., filed Apr. 5, 2001), and Coleman v. Schwarzenegger, Case No. 90–cv-0520 LKK JFM (E.D. Cal., filed May 14, 1990). (Doc. 27.) The defendants' motion was considered on May 31, 2017 by the previously-assigned magistrate judge, who recommended that it be denied in its entirety.

---

[1] A transgender woman is "a person whose female gender identity is different from the male gender assigned to her at birth." Norsworthy v. Beard, 87 F.Supp.3d 1164, 1169 (N.D. Cal. 2015), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015).

(Doc. 39.) This recommendation was adopted in full by the Honorable Dale A. Drozd on September 25, 2017. (Doc. 45.)

Defendants filed an answer on October 30, 2017 (Doc. 49), and a discovery and scheduling order issued thereafter. (Doc. 50.)

By order dated December 26, 2017, the previously-assigned magistrate judge determined that the appointment of counsel for plaintiff was warranted. (Doc. 52.) Attorney Carter C. White was appointed to represent plaintiff.

Approximately one month later, the defendants filed the pending motion for summary judgment for plaintiff's failure to exhaust his administrative remedies for her Fourteenth Amendment equal protection claim against Coffin, Cryer, Lewis, and Sundaram. (Doc. 53.) Plaintiff opposes this motion on the merits and seeks leave to amend/supplement the FAC. (Doc. Nos. 55, 56, 69.) Defendants oppose the motion to amend. (Doc. 64.)

**III.     Plaintiff's Motion to Amend**

Plaintiff moves the court for leave to amend pursuant to Federal Rule of Civil Procedure 15(d) and has submitted a proposed second amended complaint ("SAC").[2] (Doc. Nos. 56, 69.)

Plaintiff names 29 defendants in the SAC: (1) Scott Kernan, Secretary of the CDCR, who "has ultimate responsibility and authority for the operation of the CDCR, including the administration of health care and the execution of policies governing medical care," (2) Dr. Raymond Farrell, CSATF Psychologist, (3) Dr. Raymond J. Coffin, CSATF Chief Psychologist, (4) Clarence Cryer, CEO of the CSATF Medical Department, (5) J. Lewis, Deputy Director of Policy and Risk Management at California Correctional Health Care Services ("CCHCS"), (6) Dr. J. Sundaram, a Primary Care Physician ("PCP") at CSATF, (7) Katherine Tebrock, CDCR Deputy Director, Statewide Mental Health Program, who "is responsible for appointment members of CDCR's Sex Reassignment Surgery Review Committee ("SRSRC"), (8) Dr. Ricki Barnett, CDCR Deputy Director of Medical Services and "responsible for appointing members of

---

[2] Plaintiff has submitted three versions of the second amended complaint. (See Doc. Nos. 56, 60, 69.) The most-recently filed version dated May 2, 2018, includes additional information and facts obtained in discovery. (Doc. 69.) The court's order here is premised on this most recent version of the SAC ("[Third Substitute Proposed] Second Amended and Supplemental Complaint for Declaratory and Injunctive Relief") (Doc. 69-1).

the SRSRC," and (9) Dr. Jeffrey Carrick, Deputy of Medical Executive Utilization Management and Chair of the Headquarters Utilization Management Committee ("HUM").

Plaintiff then names several members of the HUM who are alleged to have denied her medically necessary surgery: (10) Dr. Arun Vasudeva, (11) Dr. Grace Song, (12) Dr. David Ralston, (13) Dr. Jasdeep Bal, (14) Dr. Meet Boparai, (15), Dr. Elizabeth Dos Santos Chen, D.O., CDCR Chief Medical Officer for the Southern Region of Clinical Support, (16) Dr. Felix Igbinosa, (17) Dr. Steven Tharatt, (18) Dr. Renee Kanan, and (19) Dr. Lesley Carmichael.

Plaintiff also names several members of the SRSRC who are alleged to have denied plaintiff medically necessary surgery: (20) John Lindgren, (21) Dr. Michael Golding, (22) Dr. Richard Gray, (23) Dr. Michael Lee, (24) Dr. Laura Ceballos, Ph.D., CCPH (25) Dr. Amy Eargle, Ph.D. CCPH, (26) Kim Cornish, (27) Daniel Ross, a CDCR Captain, and (28) Thomas Bzoskie. Lastly, plaintiff names (29) the CDCR itself.

**A.      Allegations in the Proposed SAC**

**1.      Plaintiff's Request for Treatment and Dr. Farrell's July 2013 Report**

Plaintiff, a transgender inmate, suffers from gender dysphoria and has been living as a woman for most of her adult life. Plaintiff has been housed at CSATF since October 2012. Around March 2013, plaintiff met with CSATF physician Dr. Alphonso to request treatment for her gender dysphoria. Dr. Alphonso referred plaintiff to CSATF's endocrinologist, Dr. Pawan Kumar, who met with plaintiff on April 23, 2013, and explained to plaintiff that she would first need to be diagnosed with Gender Dysphoria Disorder ("GDD") before being treated for it. Dr. Kumar referred plaintiff for a Mental Health appointment for an official evaluation.

On April 23, 2013, and May 15, 2013, plaintiff met with defendant Dr. Farrell for a psychological evaluation where plaintiff discussed her history of identifying as a female and her illicit hormone treatment for her gender dysphoria.

On July 19, 2013, after consultation with Dr. Coffin, Dr. Farrell produced her official report from this meeting. At the time, the only training Dr. Farrell and Dr. Coffin had regarding treatment of transsexual patients was a one-day seminar. Dr. Farrell's report excluded certain statements made by plaintiff about wanting to be a woman and it misclassified plaintiff's sexual

orientation. Dr. Farrell then incorrectly diagnosed plaintiff as not having Gender Identity Disorder, writing that plaintiff "denied ever having any discomfort with his gender." He recommended that plaintiff engage in a year-long psych-education treatment program (the "Program"), after which she could be re-assessed for hormone replacement therapy.

On October 21, 2013, plaintiff filed a 602 Health Care Appeal challenging Dr. Farrell's report and diagnoses. In response, plaintiff was interviewed on November 25, 2013 by Dr. Coffin, who granted in part plaintiff's appeal but still required plaintiff to complete the Program.

For months, plaintiff repeatedly asked to be placed in the mandatory sessions for the Program but was ignored. On March 17, 2014, plaintiff filed another 602 Health Care Appeal to begin the sessions so that she could eventually be placed on hormone therapy. Dr. Coffin partially granted the appeal on April 28, 2014, explaining that plaintiff has not started the Program sessions because Dr. Coffin had delayed in completing the Gender Identity Report. On September 21, 2014, plaintiff began hormone therapy to treat her gender dysphoria.

On March 29, 2015, plaintiff filed a Health Services Request Form to speak with CDCR's transgender specialist doctor, but plaintiff's PCP, Dr. Sunduram, denied the request and would not allow plaintiff to meet with any specialist for her gender and sexuality issues.

On an unspecified date, Lewis upheld the policy prohibiting sex reassignment surgery ("SRS") to treat gender dysphoria.

### 2. The Quine Settlement

On August 7, 2015, a settlement was reached in Quine v. Beard, 3:14-cv-2726-JST (N.D. Cal.), resulting in changes to CDCR policies to allow transgender prisoners access to treatment for gender dysphoria as well as clothing and commissary items for their preferred gender identity.

After the Quine settlement but before substantive changes were made to CDCR policies, plaintiff submitted another request to be evaluated for SRS. When this request was denied, plaintiff initiated this action on August 13, 2015.

///

///

///

### 3. CDCR Policy Changes

#### a. Regulations Regarding Personal Property

In March 2016, plaintiff requested female gender appropriate clothing and cosmetics. This request was denied by CDCR because the policy at the time did not authorize plaintiff to have the requested items.

In June 2016, CDCR adopted regulations that would allow transgender inmates and inmates with symptoms of gender dysphoria to have access to authorized personal property in accordance with their gender identities. The new regulations also established the Transgender Inmates Authorized Personal Property Schedule, which lists personal care/hygiene items for transgender prisoners. These regulations were re-adopted in April 2017.

#### b. Regulations Regarding Treatment

The medical community has recognized that SRS is a viable treatment for patients with gender dysphoria. While some individuals with gender dysphoria do not need this, for others surgery is essential and medically necessary. For this latter group, relief from gender dysphoria cannot be achieved without modification of their primary and/or secondary sex characteristics, including SRS, breast implants, facial reshaping, and voice modification surgery.

On May 24, 2016, CDCR updated its guidelines for medical treatment for patients with gender dysphoria. The regulations at issue, however, explicitly state that vaginoplasty is not a medically necessary surgery even though it makes exceptions for women with cystocele and rectocele. In addition, plaintiff is subjected to the year-long Program to become eligible for sexual reassignment treatment, but this Program does not exist within CDCR policy.

On July 28, 2016, plaintiff submitted yet another request for SRS. On February 27, 2017, individuals on the HUM and its subcommittee, the SRSRC, reviewed and denied plaintiff's request. These committees were under the supervision and control of defendants Barnett, Tebrock, and Does 1-25.

On March 15, 2017, plaintiff filed a 602 appeal of the HUM's decision and noted that her endocrinology treatment has left her at a toxic level of estrogen hormones, twice that of a normal woman. Plaintiff again sought a referral for SRS. This appeal was denied by the HUM on

September 1, 2017.

### 5. Plaintiff's Claims

Based on the foregoing, plaintiff seeks to assert the following claims: (1) an Eighth Amendment medical indifference claim for failure to provide necessary medical treatment beyond hormone therapy, (2) a Fourteenth Amendment equal protection claim for failing to provide proper medical treatment in the form of vaginoplasty on the basis of her transgender status, (3) a Fourteenth Amendment equal protection claim for failing to provide plaintiff access to personal items approved and available to prisoners in female institutions on the basis of gender and transgender status, (4) discrimination on the basis of disability in violation of the Americans with Disabilities ("ADA") and the Rehabilitation Act by denying her adequate and necessary medical treatment, denying proper and reasonable training to custody and health staff, and depriving plaintiff of programs and activities in a manner that is detrimental to her health, and, finally, (5) violation of the Affordable Care Act, 42 U.S.C. § 18116, for the CDCR's continued discrimination against plaintiff on the basis of sex when they deny her adequate and necessary medical treatment on the basis of sex stereotyping and/or a belief that people who are assigned the male sex at birth should display only stereotypically male characteristics, behaviors, and dress.

Plaintiff seeks declaratory and injunctive relief. She also seeks costs and attorneys' fees.

### B. Legal Standards

Because some of plaintiff's claims arise from actions "that occur[ed] subsequent to the filing of the complaint," plaintiff seeks leave to amend and supplement her pleading pursuant to Federal Rule of Civil Procedure 15(d).

Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within 21 days of service, or if the pleading is one to which a response is required, 21 days after service of a motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Granting or denying leave to amend a complaint is in the discretion of the Court, <u>Swanson</u>

v. United States Forest Service, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). The policy to grant leave to amend is applied with extreme liberality. Id. After a defendant files an answer, leave to amend should not be granted where "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Madeja v. Olympic Packers, 310 F.3d 628, 636 (9th Cir. 2002) (citing Yakama Indian Nation v. Washington Dep't of Revenue, 176 F.3d 1241, 1246 (9th Cir. 1999)).

When determining whether to grant leave to add new parties, the Court is required to consider whether the new parties are properly joined. Parties *must* be joined if the court cannot provide complete relief otherwise or adjudicating the issues without the new party could impair the new party's interests or risks double, multiple or inconsistent obligations. Fed.R.Civ.P. 19.

Parties *may* be joined if the right to relief arises out of the same transaction, occurrence or series of transactions or occurrences and there is a common question of law or fact will be determined in the action. Fed.R.Civ.P.20. If new parties are added, the Court may order separate trials as necessary "protect a party against embarrassment, delay, expense, or other prejudice that arises." Fed.R.Civ.P. 20(b).

**C.     Analysis**

      **1.     The Parties' Arguments**

Plaintiff's proposed SAC includes the addition of new defendants and new claims. It also identifies several Doe defendants who participated in the HUM and SRSRC decision to deny plaintiff's request for SRS. Plaintiff argues that her motion should be granted because there has not been undue delay, amendment is not futile, and the newly added claims are predicated on the same alleged conduct of the defendants.

Defendants oppose the motion, arguing that the supplemental claims are unrelated to the prior allegations since they are premised on CDCR's revised guidelines regarding SRS, which present distinct questions of fact than those based on the CDCR's prior policy and the individual

8

defendants' conduct based thereon. Defendants argue that any contention by plaintiff that the new claims arise out of the same series of transactions or occurrences is undermined by the implementation of CDCR's new policy, which breaks the chain of events. Defendants next argue that the addition of new claims and defendants would not promote judicial economy or efficiency considering the procedural posture of this action and the length of time since it has been filed. They also argue that they would be prejudiced by allowing the unrelated claims to proceed here since the defendants' actions under the old policy would likely color the jury's consideration of the defendants' actions under the new policy. Lastly, they argue that the addition of any new claims would be futile since they amount to a mere difference of medical opinion.

In her Reply, plaintiff disputes each of these contentions, arguing, inter alia, that (1) there will not be any jury confusion since a jury will not determine any facts in this case because she seeks declaratory and injunctive relief only, (2) this case does not amount to a mere difference of medical opinion; instead, it is an action by a transgender inmate seeking appropriate treatment for her gender dysphoria, and (3) the facts alleged in the proposed SAC are premised—as are the facts in the FAC—on the defendants' delay and/or denial of appropriate treatment for plaintiff's gender dysphoria.

## 2. Discussion

The amended complaint seeks to add 18 additional defendants—expanded from the five who are currently defendants in this action. (Doc. 67-1) In neither her motion nor in her reply, does the plaintiff address the standards for joinder of the new defendants. The plaintiff does not contend that the new defendants *must* be joined under Rule 19 and the Court agrees that complete relief can be afforded without doing so. The tougher question is whether the new defendants *may* be joined under Rule 20.

Undoubtedly, the plaintiff has been denied the surgeries she seeks to address her gender dysphoria. This denial is ongoing. However, the reasons for the denial are vastly different. In 2015, she was denied the surgeries because she had not been taking female hormones provided by the prison for 12 months and because the CDCR policy did not allow inmates to have them. (Doc. 12 at 18; Doc. 67-1 at 8) In 2017, though the policy changed to allow the surgeries, the plaintiff

was again denied the surgeries by the new defendants. The plaintiff does not allege any facts to explain why she was denied the surgeries in 2017 (Doc. 67-1 at 8).

The Court does not find that the new allegations related to the new defendants arise out of the same transaction, occurrence or series of transactions or occurrences. The operative complaint demonstrates that the plaintiff was not considered for surgery because the CDCR policies precluded this consideration. The new allegations demonstrate that the new defendants considered her for the surgeries but denied them nonetheless. This demonstrates also that the operative complaint and the second amended complaint present different questions of law and fact.[3] Consequently, the Court **DENIES** the plaintiff's request to amend the complaint.[4]

**IV.     Defendants' Motion for Summary Judgment for Failure to Exhaust**

Defendants move for summary judgment for failure to exhaust administrative remedies on plaintiff's equal protection claim.[5] As discussed supra, this claim is premised on the defendants' decision to deny plaintiff SRS based on the allegedly discriminatory policies that were set forth in CCR § 3350.1(b)(2) and DOM § 92010.26.[6] Specifically, plaintiff claims a violation of her equal protection rights based on the policy that provides vaginoplasty to female inmates with certain conditions but not to transgender women. Plaintiff counters that she properly exhausted this claim even though the grievance at issue does not specifically mention "equal protection."

**A.     Legal Standards**

**1.     Summary Judgment**

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248. A

---

[3] However, of course the plaintiff may file a new action and request that it be related to this current action, if appropriate.
[4] The Court does not consider the Rule 15 factors because, the joinder consideration is determinative.
[5] Defendants do not challenge plaintiff's Eighth Amendment claim.
[6] Since defendants moved for summary judgment before plaintiff filed her motion to amend, it is clear that any arguments made in defendants' motion are related only to the claims concerning the CDCR policy in existence before the revised policy implemented on or around May 2016. To distinguish these claims from one another, the Court will refer to the former as "the old policy" and the revised guidelines as "the new policy."

dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Devereaux, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to judgment. See Celotex, 477 U.S. at 323.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available

11

remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's pleading is signed under penalty of perjury and the facts therein are evidence for purposes of evaluating the defendants' motion for summary judgment.

**2.      California's Administrative Exhaustion Rules**

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner,

532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90.

For a remedial procedure to be "available" it must exist both in law and, in actual practice, be "capable of use to obtain some relief for the action complained of." Ross, 136 S. Ct. at 1859 (internal quotation marks omitted). In Ross, the Supreme Court enumerated three instances where a procedure, in a practical sense, is unavailable: (1) when the process operates as a "simple dead end" with no actual possibility of relief to prisoners; (2) when the process is so opaque or confusing that it is "essentially unknowable—so that no ordinary prisoner can make sense of what it demands"; and (3) when prison officials thwart inmates from using the process through machination, misrepresentation, or intimidation. Id. at 1859–60 (internal quotation marks omitted).

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

**B.    Undisputed Facts**

Plaintiff filed several appeals before initiating this action but only one is relevant to the Court's analysis.

On April 3, 2015, plaintiff submitted a Patient-Inmate Health Care Appeal CDCR 602 Form, SATF HC 15061336 ("Appeal 1336"), complaining as follows:

> Deliberate Indifference: Violation of CDCR TITLE 15 / Farmer V. Brennan
>
> I am a Transgender Inmate, I have been denied my request for Sexual Reassignment Surgery, A medically necessary Surgery. this denial is a violation of CDCR TITLE 15 3350, as well as A rights violation under Farmer V. Brennan. [¶] As per CDCR TITLE 3350. Sub section (a). The Medical Dept. is required to provide medically necessary services. By denying my request for reassignment surgery,

13

> Dr. Sunderam is in Violation of Article 8 Section 3350, Also Article 8 Section 3350.1 provides a list of ailments that are excluded, and the surgery I have requested is not included on that list. To deny me all of the necessary medical treatment needed is also tantamount to deliberate indifference, which is a violation of Farmer v. Brennan. In addition, The SOC set forth by WPATH[7] has determined that surgeries e.g. Sexual Reassignmet, Breast Augmentation, and Vocal Femenization as well as Facial Femenization, are necessary, and "not" particularly "elective" in regard to the mental health of the trans-person seeking to alleviate his/her Gender Dysphoria. I have been diagnosed with gender Dysphoria, and I beleive that these surgeries are necessary to my health and well-being in helping to provide relief from my Gender Dysphoria, denial is a violation of my rights.

Decl. of S. Gates in Supp. of Defs.' Mot. Summ. J. Ex. B (Doc. 53-1 at 11-14) (misspellings and stylized capitalizations in original). By way of relief, plaintiff sought "the surgeries necessary, which included (but are not limited to), Sexual Reassignment, Breast Augmentation, as well as Facial Femenization and Vocal Femenization [sic]." Id.

Appeal 1336 was bypassed at the first level of review and denied at the second level of review by defendant Cryer on April 23, 2015, because plaintiff had not yet completed one year of continuous hormone treatment. Gates Decl. Ex. B (Doc. 53-1 at 15-16).

Plaintiff appealed the denial on May 7, 2015, claiming that he had taken illicit hormones before his incarceration that should count towards the one-year of continuous hormone treatment. Gates Decl. Ex. B (Doc. 53-1 at 12).

On May 27, 2015, defendant Lewis denied plaintiff's grievance at the Director's Level of Review because his unmonitored hormone therapy prior to incarceration could not be verified and thus did not count towards the one-year minimum for hormone therapy. Gates Decl. Ex. B (Doc. 53-1 at 9-10).

**C.    Analysis**

Defendants move for summary judgment on plaintiff's equal protection claim and argue that she failed to exhaust administrative remedies. They argue that Appeal 1336 does not serve to exhaust this claim because it does not address any policy regarding the availability of vaginoplasty for female inmates as opposed to transgender inmates. Indeed, Appeal 1336 does not

---

[7] WPATH is an acronym for Worth Professional Association for Transgender Health.

make any reference to "equal protection" or the availability of vaginoplasty to some but not other CDCR inmates. They also argue that Appeal 4695 could not have served to exhaust plaintiff's administrative remedies because it was not submitted and a final decision was not received until after plaintiff initiated this case. Defendants have thus met their burden to demonstrate that plaintiff did not properly exhaust those remedies as to her equal protection claim based on the availability of vaginoplasty for female inmates but not transgender inmates.

Generally, the amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[8]

---

[8] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought' "). Those cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in Plaintiff's pleading. Section 3084.2 was amended in 2010 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments included the addition of subsection (a)(3). See Cal. Code Regs. tit. 15, § 3084.2 (history notes 11-12 providing operative date of amendment). Wilkerson and Sapp used the pre-2011 version of section 3084.2, as evidenced by their statements that the regulation required the inmate to "describe the problem and the action requested" – a phrase that does not exist in the version of the regulation in effect in and after 2011. Griffin is distinguishable because it discussed the Maricopa County Jail

The institutional regulations required plaintiff to include sufficient facts to give notice of her claim. Defendants are correct that Appeal 1336 concerns a SRS but does not reference a vaginoplasty or an equal protection violation. Nonetheless, plaintiff is also correct that she was not required to use legal terminology or phrases like "equal protection" or "discriminatory on the basis of gender or transgender status" in her grievance to have exhausted her administrative remedies. Griffin, 557 F.3d at 1120. Rather, the intent of the grievance is to "alert the prison to the nature of the wrong for which redress is sought." Sapp, 623 F.3d at 824.

In Griffin, a prisoner was taking prescription medications for a medical condition that led to impaired vision and depth perception making it difficult for him to access his upper bunk. 557 F.3d at 1118. After falling from the top bunk, Griffin filed a grievance requesting accommodations for accessing the top bunk. Id. While his grievance was pending, the prison nurse issued an order for a lower-bunk assignment that prison staff disregarded. Id. at 1118-19. The inmate then appealed his grievance on the access issue for the top bunk but did not mention the fact that prison staff disregarded the nurse's lower bunk chrono. Id. at 1119. Since plaintiff's claim in his lawsuit was that prison staff failed to comply with the nurse's order, the Ninth Circuit held that Griffin failed to properly exhaust because the prison officials had concluded, based on the limited information included in the grievance, that the only issue was one of access and that the nurse's lower bunk chrono resolved the issue. Id. at 1121. The court held that the grievance did not "provide enough information ... to allow prison officials to take appropriate responsive measures" to any claim premised on the staff's alleged failure to abide by the nurse's order. Id. (citations omitted).

In contrast, in this case the wrong identified by plaintiff in Appeal 1336 was the denial of the SRS—a necessary component of which is a vaginoplasty—and related surgeries, and the relief that she sought was the SRS and those other surgeries. As Griffin noted, "[t]he primary purpose of a grievance is to alert the prison to a problem *and facilitate its resolution*…." 557 F.3d

---

administrative remedies rather than the CDCR's administrative remedies. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals.

at 1120 (citation omitted) (emphasis added). Had prison officials granted plaintiff's grievance and approved her request for the surgery, then it would have fully resolved the plaintiff's complaints.

For these reasons, the Court finds that Appeal 1336 was sufficient to exhaust plaintiff's administrative remedies as to her equal protection claim and will therefore recommend that defendants' motion for summary judgment be denied. The undersigned makes no findings at this procedural posture as to whether plaintiff exhausted her available remedies for any claims related to the new policy.

## V.       Conclusion

Based on the foregoing, the Court **ORDERS**:

1.       Plaintiff's motion to amend and supplement (Doc. 56) is **DENIED;**

The Court also **RECOMMENDS:**

1.       Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 53) be **DENIED**.

The findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 21 days after being served with the findings and recommendations, the parties may file written objections with the Court pursuant to Federal Rule of Civil Procedure 72. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within 21 days after being served with a copy of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 24, 2018**                    **/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE